The Chancellor.
On the 12th August, 1830, an agreement was made between G. Hoyt, Stephen Hoyt and Neyins and Townsend, of the one part, and Peter I. Stryker, of the other part, to be completed on or before 15th September, then next, by which the parties of the first part agreed to sell to said Stryker ¡all their interest in the stock of “The Bridgewater Copper Miming Company,” for $80,000, and the said Stryker agreed to buy the same, at that price, and to pay $15,000 thereof on or before the said 15th September, the residue, $65,000, to be paid in five years from that date, with interest on the same, payable «half yearly in advance; the payment of the principal to be satisfactorily secured, either by a mortgage on the real estate of the ¡said company, if that can legally be done, or in some other satisfactory manner. And the said Stryker agreed that he would,, ■on or before the said 15th September, agree with them that in case the said interest on the said $65,000 should not be paid when it should become payable as above mentioned, or within ■one month thereafter, he, the said Stryker, would give up to •them, on demand, quiet possession of all the property, real and ■personal, belonging to the said company, and reconvey to them ¡all their interest in the stock of the company, in full discharge ¡.and satisfaction of the said $65,000; and that said Stryker was not to be held personally responsible, in his private property, for the said sum of $65,000; that on said Stryker’s paying the ■.said $15,000, and executing the said mortgage, or giving other satisfactory security, the said Hoyts and Nevins and Townsend would convey to him, by a transfer on the books of the said company, or otherwise, all their interest in the stock of said company ;v that if the said $15,000 should not be paid on or before the said 15th September, the payment thereof should be satisfactorily secured, and that no stock was to be transferred till the same was paid; and that the said $65,000 was to be paid in four «equal yearly payments, on the 15th September in the years 1832, .1833, 1834 and 1835, respectively.
*271 At the foot of this agreement appears, of the date of September 15, 1880, a receipt as follows: Received on the within agreement a bond executed by P. I. Stryker and Henry Vanderveer, of this date, for the within mentioned sum of $15,000, payable September 15, 1831, in part fulfilment of the within mentioned agreement.
A special meeting, called by order of the president, was held October 10, 1830, present G. Hoyt, Townsend, Hardenburgh and S. Hoyt. The president presented the resignation of J. I. Hoyt as a director, which was accepted, and T. A. Hartwell was elected by the board to fill the vacancy. Mr. Townsend presented the resignation of Mr. Nevins, which was accepted, and Peter I. Stryker was elected by the board to fill the vacancy. G. Hoyt tendered his resignation as a director, which was accepted; and P. I. Stryker was then elected president of the board : and George Wood was elected a director in the place of G. Hoyt. Mr. Townsend then offered his resignation as a director, which was accepted. It was then resolved, that the company consider it expedient “to raise funds on bond and mortgage, to put the works in operation and carry on the same and a committee was appointed “to endeavor to effect a loan for that purpose, and report to the board forthwithand the minutes say, the committee retired, and soon returned and reported “that they can effect a loan for that purpose by taking a note of P. I. Stryker, payable on demand, with interest, for $65,000, and recommend that the company receive the same as cash, and execute to Goold Hoyt the company’s bonds and mortgage for that sum, payable in four equal payments, one quarter part thereof on the 11th October in the several years of 1832, 3, 4 and 5.’.’ The board accepted the report, and ordered the bonds and mortgage to be executed accordingly. They then elected William Thomson a director in the place of E. Townsend, who had resigned, as before stated. Stephen Hoyt then resigned as secretary, and William Thompson was elected secretary. It was then resolved that Stephen Hoyt (the late secretary) give an order on Jeremiah Parsell to deliver into the possession of the new secretary of the company all the property in his possession belonging to the company; and that he deliver to the secretary all the *272 books and papers belonging to the said company.
There is endorsed on the agreement before set forth, of the date of October 11, 1880, a writing signed by G. Hoyt, by which he acknowledges to have received from the said company their bonds and mortgage for $65,000, and the bond mentioned in said agreement, for $15,000, in full of P. I. Stryker’s note for $65,-000, and also in full satisfaction and discharge of P. I. Stryker from all the stipulations and conditions of the said agreement.
At a meeting of the board held the 1st Tuesday of July, 1831, present Stryker, Camman, Green, Gaston and Thompson, it was resolved, “That the promissory note given by Peter I. Stryker to. the company be given up to him.”
At a meeting of the board on the 13th December, 1836, a preamble and resolution were adopted, stating that a compromise and settlement between G. Hoyt and the board had been made, and that after correcting all errors, and crediting all payments, and making such deductions “as the company claim a right to have made, on account of the purchase for which this company heretofore gave their bonds and mortgage on their real estate, lands and property, there is legally due and owing him from this company $86,378 for and on account of said purchase, and to secure the payment of which sum, with interest, this company have agreed to give their bond and mortgageand resolving that a bond and mortgage be given by the company to said Hoyt, accordingly, payable in two years from December 15,1836, with interest half yearly, and that the president be authorized to sign and execute the same under the corporate seal of the company, on the lands and property theretofore mortgaged to said Hoyt; and that after the said mortgage shall be recorded, the said bond and mortgage be delivered to said Hoyt, or his attorney, on the cancellation of the said former mortgage and the bonds accompanying the same.
At a meeting held on the 20th February, 1838, a supplement to the charter was passed, authorizing the company to increase their capital stock in any sum not exceeding $500,000; and that any stock holder may be eligible as director; that a share shall be $50 instead of $500 ; and that the number of shares shall be *273 increased in the same proportion as the amount of a share therein is lessened by the supplement.
At a meeting held October 16, 1838, it was, among other things, resolved, that “Professor Pattison and J. W. Odcnheim (directors) be a committee to negotiate with Goold Hoyt respecting the claim he professes to have on the company’s mines, and a certain bond given by P. I. Stryker and Henry Vanderveer, for $15,000, to said Hoyt, as part of the consideration of said mines; and the said committee arc instructed to obtain, as far as may be, such indulgence in the payment of the above sums as the convenience of the company seems to require.
From this history, it is manifest that the transaction out of which the first mortgage arose was not a loan, but a contract of sale and purchase; and one of the terms of the contract was that the interest should be paid half yearly in advance. Is this Usury'?
I am not aware that this question has ever been presented to our courts; and I have found no case in which the distinct question has ever been decided. It is settled that banks, in loaning money, may take interest in advance, on discounting notes in their usual course of business. And it is held in New York and Massachusetts that this may be done by others, as well as banks, on negotiable paper, unless the time it has to run is so long as to afford a presumption that usury was intended.
In the case of Marsh vs. Martindale, 3 Bos. and Puller, 158, a bill at throe years was discounted and the interest for the whole period was taken in advance, or discounted.
In delivering the opinion of the court in that case, Lord Alvanloy says : “It was contended (by counsel) that the transaction was to all intents a purchase of an annuity; and this was certainly the strongest ground the plaintiff could take, for it has been determined, in all the cases on the subject, that a purchase of an annuity, however oxhorbitant the terms may be, can never amount to usury. But if the transaction respecting the annuity be only a cover for the advancement of money by way of loan, it will not prevent the securities from being void. In that case, his lordship said, there was no idea between the parties of any thing but a loan of money; and that it was impossible to wink *274 so hard as not to see what the real transaction was.
In the case in hand, there is no room for the idea of a loan of money. The bonds and mortgage were given in fulfilment of a prior written agreement for the sale and purchase of property, at a price stipulated, to be paid, with interest, in a stipulated manner.
If the interest for the whole time these bonds had to run was to have been paid in advance, perhaps the court might consider that the parties made the transaction the subject or occasion of a contract between them for the loan or forbearance of money at an usurious rate of interest. But the contract was, that the interest should be paid half yearly in advance. To constitute usury there must be an unlawful or corrupt intent. 7 John. Ch. R. 77; 2 Call. 110; 1 Beat. 287, 289.
I am of opinion that the transaction furnishes no sufficient evidence of such intent. It is hardly possible to suppose that the seller thought the contract was tainted with a vice which would subject him to the loss of his whole property.
I am unwilling, therefore, to say that the first mortgage was void. But, if I could think it was, it strikes me it would be peculiarly a case for the application of the doctrine that such a contract may by subsequent agreement of the parties be freed from the vice. 10 Wheat. 367.
The second mortgage given in this case was, I think, recognized and sanctioned by the board of directors, after it had been given. The old mortgage was procured .from Hoyt and cancel-led ; a certificate was obtained from the clerk of the county, for the purposes of the company, after the cancellation of the first mortgage, to show that no other mortgage existed on the property of the company except the second mortgage; and, in October, 1838, a committee was appointed by the board to negotiate with Hoyt, and obtain such indulgence in the payment of his claims as the convenience of the company seemed to require. This makes it unnecessary for me to examine several questions debated at the bar, touching the validity of the second mortgage.
One objection to it was, that one of the four directors by whom it was ordered to be given was not a stockholder. The lOriginal charter does not say that the directors shall be stockholders; and *275 if none but stockholders could be directors, the company was not originally lawfully organized, inasmuch as two persons took the whole stock, and proceeded to elect seven directors; and there is nothing in the cause to shew that either of the other five directors elected were then stockholders. I am inclined to think, that under the original charter it was not necessary that directors should be stockholders. The supplement was not passed till after the second mortgage was given.
The next objection to the validity of the second mortgage was, that there was no legal meeting of the board at the time it was directed to be given. It is certainly true, that a mere accidental assembly of a majority of persons who are directors of a company does not make a board; and if a lawful board had at once repudiated this second mortgage, perhaps the best ground that could have been taken to maintain its validity would have been the production of the minutes of the board, to show that, notwithstanding the requirements of the by-laws, extra meetings were constantly called without notice to all the directors. It seems to have been the uniform practice for four or five to get together on the call of the president, and transact important business.
The next objection taken was, that no election for directors had been held for several years before the giving of the second mortgage. The charter says, that the corporation shall not be deemed to bo dissolved in consequence of an omission to elect directors at the time &c.; but that it shall be lawful to hold such election on such other day as shall be prescribed by the by-laws and ordinances of the corporation.
Does the power to transact business remain in the old board 1 If, so, how long 1 The books are not entirely agreed on this subject ; and from the view I have taken of the case, it is not necessary to discuss the question.
The Chancellor intimated that in this case, and under the circumstances attending it, it would be inequitable to allow the complainant to recover more than the $65,000, and interest thereon from the date of the first mortgage, deducting any interest that may have been paid.
The second mortgage was taken as a substitute for the first, *276 and with a view of relieving it from an objection to its validity by reason of its requiring the interest to be paid half yearly in anvance; and was given, no doubt, principally for the purpose of obtaining the two years delay. If the first mortgage was void, the complainant would have lost the whole. If it was good, there was no occasion for taking a second mortgage; and if the complainant could have been assured that the first mortgage would be sustained, he would not have thought of asking a new one in the place of it. Should he, then, when taking a new mortgage, to relieve his first mortgage from objection because by it he got the trifling advantage of the use of a half year’s interest, impose the terms or condition of converting the whole interest then due, twenty odd thousand dollars, into principal. I can hardly suppose it was demanded by the complainant. It is more probable that the new mortgage was given in that shape without reflection, and under the idea that it could be paid within the two years mentioned therein for its payment.
The solicitor and counsel for the complainant consented to take a decree in accordance with this intimation.
Decree accordingly.